ALLEGANY COUNTY.—HON. CLARENCE A. FARNUM,

SURROGATE.—September, 1883.

## GRIFFIN V. SARSFIELD.

*In the matter of the application for the appointment of a guardian of the person and property of* CATHERINE BELL GRIFFIN, *an infant under the age of fourteen years.*

The father of an infant whose mother is dead is entitled to its guardianship, if he be a suitable person; the right, being one of nature, should be accorded to him unless good cause is shown to the contrary. But the welfare of the infant is the paramount consideration.

A Surrogate's court should take into account, in designating a general guardian for an infant of tender years, the wishes of a deceased mother, as indicated in an attempted testamentary appointment, though the latter be void by reason of the circumstance that the father survived the mother.

A sole executor or administrator should, generally, not be appointed guardian of the property of infant beneficiaries of his trust.

Code Civ. Pro. § 2851, contains no grant of power to a married woman, dying during the lifetime of her husband, to appoint, by her will, a guardian of the person or property of an infant child of the marriage.

That provision relates to practice only, and in no way modifies the earlier statute respecting the right to make such appointment.

A judgment of absolute divorce, rendered by the court of another state in favor of the wife, upon allegations of cruel and inhuman treatment of herself and their children, by the husband, both parties being then residents of that state, and which awarded the custody of the infant children of the marriage to the mother, who subsequently removed with the children to, and resided and died within, this State, is not conclusive upon the Surrogate's court here, to which application is made for the appointment of a general guardian of one of the children, against the suitableness of the father to receive such appointment, because the question of the custody of the children was only incidentally before the foreign court, and, at any rate, was decided only as between the father and the living mother.

The mother of an infant, residing with her husband, its father, in Michigan, having procured from a court of that state a judgment of absolute divorce from him, which awarded to her the custody of the infant, removed with the latter to this State, where she resided for nearly a year, and then died, the infant living, during that time, with her. The father, having received letters of guardianship from a probate court in the former state, applied to a Surrogate's court here, for ancillary letters of guardianship, to be issued to him under Code Civ. Pro., § 2838.—

*Held*, that the applicant had not brought himself within the provisions of that section, which requires the original letters to have been granted by a court "within the state or territory where the ward resides."

A maternal aunt appointed general guardian of the person and property of a motherless female infant aged three years, against the objection of its father who desired the appointment, upon proof of facts stated, including the unsuitableness of the latter for the office.

PETITION for the appointment of a general guardian of the person and property of Catherine B. Griffin, an infant of the age of three years, presented by Catherine Sarsfield, her maternal aunt, who had been nominated as such guardian by the following clause of the will of the infant's mother: "I also nominate and appoint Mrs. Catherine Sarsfield (my sister) to be guardian of my three children Carrie L., Katie B., and Ormie M. Griffin, until they shall attain the age of twenty-one years, giving her full power and con-

trol over them and their property." The testatrix was, at the time of her death, a resident of Allegany county, in this State. The infant's father objected to the appointment of any person other than himself, as such guardian. Other facts appear sufficiently in the opinion.

JOHN C. SULLIVAN *and* RUFUS SCOTT, *for petitioner*.

B. C. RUDE, *for objector*.

THE SURROGATE.—This is an application made by Catherine Sarsfield, the maternal aunt of the infant Katie Bell Griffin, that letters of guardianship of the infant's person and property be issued to some suitable and proper person.

The mother of the infant died a resident of this county in the spring of 1883, and the infant was then living with her. The father, Jackson A. Griffin, is living, and is a resident of the state of Michigan.

A citation was duly issued, and upon its return the father appeared and objected to the appointment of any other person than himself to be the guardian of the property or of the person of the infant, and asked that he be appointed such guardian.

The rule is well settled that the father, in such a case as this, is entitled to the guardianship of his child, provided he be a suitable person; the right is one of nature and should be accorded him unless good cause is shown to the contrary. Courts are very unwilling to deprive a parent of the care, custody and society of his own flesh and blood, and should do so only for the best of reasons.

Upon the other hand, when courts are called upon to act in this class of cases, the guiding star to their decision should be *the welfare of the infant* whose interests are before the court to be cared for.  The disappointment of a parent may be great, and his heart sorely touched by denying him the custody of his child, but if the court be perfectly satisfied that the best interests of the infant may be seriously prejudiced by his charge of the child, and that it is clear that its welfare will be promoted by awarding the custody to one other than the parent, then it becomes the duty of the court to carry out its convictions.

In the year 1870, the father, Jackson A. Griffin, married his wife, the mother of the infant Katie Bell, at Cuba in this county ; shortly thereafter he moved to the state of Michigan, which has ever since been his residence.  The fruits of that marriage are three children—a boy aged eight years and two girls, one twelve years old, and the other a little child Katie Bell, aged three years.  The parents have not lived together since the fall of 1881.

In the summer of 1882, the wife of Jackson A. Griffin commenced an action against him in the courts of Michigan, for a divorce to dissolve the marriage contract; the parties to that action were then residents of and domiciled in that state ; the bill of complaint in that action charged the defendant with cruel and inhuman treatment of the wife, that he had cruelly treated the children of the marriage, and other very serious matters which need not be recited here.

Such proceedings were had upon the issues raised in that action, that the court found the material al-

legations of the complaint to be true, and found that the marriage should be dissolved, upon which there was, on September 25th, 1882, a decree and judgment of absolute divorce duly made and entered. The decree, among other things, awarded the custody of the children to the mother until they should respectively attain the age of twelve years or until the further order of the court.

Immediately after this, the mother with her three children came to this county, where they resided with the mother's sister, Catherine Sarsfield, the petitioner, until the mother's death in April, 1883.

The mother left a will by which she bequeathed to the infant Katie Bell a specific legacy of one thousand dollars, and also made the child the residuary legatee with the other two children. This petitioner, after the admission of the will to probate, asked that letters of guardianship be issued to her by virtue of a testamentary appointment, and contended that § 2851 of the Code of Civil Procedure gave the mother the right to appoint a testamentary guardian for her minor children, even if the father be living, or, if that point should be held against her, that, by virtue of the decree of divorce granted in Michigan, the mother had the power, freed from the interference of the divorced husband.

I denied her application, holding that § 2851 related to the practice only, and in no way modified the earlier statutes relating to that subject, and that, although after the decree of divorce there was no husband, the party against whom the decree was granted remained the father, and that a mother has no power,

under the law of this State, to make a testamentary disposition of the custody of her minor children during the lifetime of the father.

It is now urged that the decree made in Michigan, awarding the custody of the children to the mother, and denying it to the father, is conclusive upon this court; that the courts of Michigan have held that the father was an improper person to have the custody of the infant children, and that this court must respect that decision.

It is true that the judgments of all courts having jurisdiction of the subject matter of the action, and of the parties, must be accepted without question.

This court has no power to investigate the merits of the questions directly at issue in that action, and settled by the judgment. It seems to me that the question of the custody of the children in that action was only incidentally before the court, and that the effect of the judgment is to hold that, as between the father and the mother, the mother was the proper person to have the custody of the children.

The mother is now dead, and I must hold, in the absence of authority to the contrary, that the judgment of Michigan does not conclude this court upon that branch of the case. The judgment may be of slight weight as evidence bearing upon the issue here presented, but is not controlling.

The will of Eliza Griffin was admitted to probate in this county May 14th, 1883. By her will she appointed an executor, residing at Wellsville in this county, who has filed his oath of office and entered upon the performance of his duties.

The specific legacy of $1,000, given to Katie Bell by that will, is to come from a mortgage of $3,500, owned by the testatrix at the time of her death, given upon real property situate in Michigan.

On August 9th, 1883, the Probate court of the county of Kalamazoo, Michigan, granted to Jackson A. Griffin letters of administration upon the estate of said Eliza Griffin, which letters recited that Eliza, at the time of her death, was an inhabitant of Allegany county, New York, and had an estate in the county of Kalamazoo, to be administered; and the letters also recited that, on said 9th day of August, 1883, the last will and testament of said deceased was duly filed and recorded at Kalamazoo. In point of fact, it cannot be true that the said will of Eliza is on file in the state of Michigan, for it remains upon file in this office, and must so remain, for one year from the time it was admitted to probate here. However, this court is not called upon to decide the effect of that proceeding granting letters of administration.

Mr. Griffin has under his control the mortgage of $3,500, from which the specific legacies of the infant children are to be paid; the executor of the will, appointed in this State, has demanded this mortgage of him, and he refused to deliver it to the executor, and has it in the state of Michigan where he resides, claiming to hold it by virtue of his appointment. A conflict may arise between the executor of the will appointed in this State and the administrator appointed in the state of Michigan. If the appointment in Michigan be good, then the father, being the sole administrator, ought not to be the guardian of the property of the in-

fant children. The interests of the children and of the administrator may be at variance, and I have uniformly declined to appoint a sole administrator or executor the guardian of the property of infants to whom the property under the trust should be paid. If the administrator have no right to the custody of this mortgage, then his act in so intermeddling with it, makes against him when he seeks to be appointed the guardian of the property of the infants. In either case, he ought not to be the guardian of the infant's property.

Since these proceedings were commenced, Jackson A. Griffin filed a petition in this court, praying that ancillary letters of guardianship of the infant, Katie Bell Griffin, be issued to him by virtue of his letters issued by the probate court of the county of Kalamazoo, Michigan, in May, 1883.

Section 2838 of the Code of Civil Procedure permits the granting of ancillary letters of guardianship, where the infant resides without the State, and within the United States, and is entitled to property within this State, and a guardian of the property of the infant has been duly appointed *within the state where the infant resided.*

The evidence is uncontradicted that the infant, Katie Bell, has resided in this county continuously for nearly a year, and was a resident of this county when letters of guardianship were issued to the father by the Michigan court, and the order or decree appointing Jackson A. Griffin, the guardian of Katie Bell, recites that she resided in the State of New York. It is clear that the father has not brought himself within the provisions of

the section of the Code cited, so that these letters can avail him here.

There has been much testimony taken before me, for the purpose of showing that the father, Jackson A. Griffin, is not a suitable person to have the custody of the little girl, Katie Bell, and the father has produced quite a number of witnesses for the purpose of breaking down the force of the evidence appearing against him. All of the witnesses for the objector, except two, speak of Mr. Griffin chiefly from their knowledge of him acquired before his leaving this county for the state of Michigan, about the time of his marriage, and they show that, up to that time, his reputation was good, his habits correct, and that they knew nothing against him. His witnesses, who speak of him from their acquaintance of late years, are two attorneys from the state of Michigan, one of whom was the attorney who conducted the divorce action against him, and the other who defended the same.

The petitioner produced several witnesses who testified to acts committed by the father in the presence of his wife and children, and of acts of cruelty to the wife and children, which were of a grave character.

It clearly appears that, for some time prior to the judgment dissolving the marriage, the father had no love or respect for his wife, and that at times the children of the marriage were the unfortunate sufferers of his dislike to their mother.

Mr. Griffin was sworn as a witness in his own behalf in this proceeding, and one of his first acts in giving his testimony, was to cast a reflection upon the little girl Katie Bell—*that there might be a question as to her*

*paternity.* Even at this time and place, he could not or would not conceal his dislike for the dead mother, and was willing that his child, whom he professed to love, should be smirched, that he might show his contempt for the mother. I cannot believe that a father who truly loved his child, and had its welfare at heart, would do this. The conduct of Mr. Griffin, while on the witness stand, thoroughly satisfied me that the mother well knew, at the time she made the testamentary disposition of the custody of her children, that the welfare of the children would be furthered if some one, other than the father had charge of them.

Some months ago, since the death of Eliza Griffin, and while the three children were living with the petitioner, Mr. Griffin called at petitioner's home and stated that he wished to take the two older children to Hornellsville, N. Y., and purchase for them some articles of clothing. He was permitted to take them, and, instead of bringing them back, took them to Michigan, where they now remain, and the girl is in a convent school and the boy on a farm. The father has no home and no permanent place of residence. He has sufficient property to properly care for and educate the children.

If this little girl is taken from this State by the father, she will have to be cared for to a great extent by persons in nowise related to her.

It was the mother's wish that her sister, the petitioner, should have the custody of the child, and certainly, at present, the aunt can do much more for the comfort and welfare of the child than strangers, and will feel inclined to do so.

If, at any time hereafter, the situation of the parties

shall change, so that the interests of the infant, now of such tender age, would be promoted by changing the custody of the infant, any person interested in its welfare may move this court under subdivision 6 of § 2832 of the Code of Civil Procedure, to change the guardian of the person.

At present, the petitioner, in my judgment, can and will do more for the child than would be done by having her enter the family of some stranger, who would not feel bound to her by ties of relationship.

The petitioner, Catherine Sarsfield, should be appointed the guardian of the person of the infant, and, upon her filing in this court a bond in the penal sum of $3,500, with two sureties, the bond to be in the usual form and approved by me, and upon filing the usual oath of office, she shall also be appointed the guardian of the property of the infant.

Ordered accordingly.